Judge UUuerwood,
delivered the opinion of the court.
A man, named tí oilman, in the spring of 1828, purchased a quantity of merchandize, in the city of New Orleans, a id abscond' d, leaving the vendors unpaid. It appears, from a bill of lading, hearing date the 2nd of May, 1828, that ue shipped seventy nine ¡packages of the merchandize, so purcuased, on board .the steamer Huníress, and consigned it to J. G. Barclay & Co., of Louisville. But this was clone in the assumed name of D. Smith, in order the better to avoid attachments. Zacearle & Co., who sold a part of the merchandize to Holtrnan, and who were hi- creditors, made pursuit, and filed their bill in the Jefferson circuit court on the 19ih of May, 3828, against lioliman, in his true name, and against him, in the assumed name of Smith, and others, with a view to subject the prop m'ty shipped to Louisville, to the payment of bis dff *505 Tftmnd. In June, L. Fougeres, claiming tbe property shipped, petitioned the court to be admitted a-a defend-ant to the bill. The court required the complainants to m'nke him a defendant, and it was done. In the ■amendment to the bill which made Fougeres a..party, the complainants charge, that he had combined with .Holtman, to deprive the complainants of their lien on the property, acquired by the attachment ordered by the chancellor; that Holtman and Fougeres have been together in Alabama, since the restraining order was executed, and that the transfer of the goods from Holt-man to Fougeres, was a fraudulent device, and was not delivered before the service of process in this case.
Fougeres, the appellant, answered, stating that he -knew nothing about the indebtedness of Holtman to the •complainants. He stated,-that about two years before filing his answer, (which was filed in June, 1828,) he lent to Holtman between $>1,590 and $ 1,600, for which he took his note, but not having the note with him, he could not state tbe sum precisely, but would cause the note to be filed as part of his answer; that he had resided, for the last ten months,in Tuscaloosa, Alabama, ■previous to which, he had lived two years in Nashville, Tennessee; that, since his residence-in Tuscaloosa, he shipped to Holtman, cotton, to the .value of between §•500 and §690, the exact amount could not be stated, because he had not the account with >iim,buthe would, ;in-due time, file it as a part of his answer-; that, having recently heard unfavorable accounts of Holtman’s affairs, about the last of April, or first of May last, he wrote to Holtman, from Tuscaloosa, pressing payment; that Holtman answered his letter, by a letter, which he .exhibits, marked A,in which was enclosed aleiter directed to J. G. Barclay & Co. signed D. fámiüh, alsoexhi bited, ■■and marked B; that the letter A, also, contained k bill ■or invoice of the goods and the bill of lading, both which are filed as exhibits, one marked C, the other D; that the goods mentioned in the bill oflading, were received by J. G. Barclay & Co.; that they were sold and transferred to the appellant on the 11th May, 1828, by transfer, endorsed on the bill of lading of that date. In part payment of the debt due him, and that he had applied to Barclay & Co for the goods, who refused to surrender them, in consequence of the restraining order..1 *506 The appellant proceeds to suggest, that Holtman was a nonresident; that he had absconded; that he was insolvent; and concludes, by making his answer a a cross bill against Holtman and tne complainants, and prays for a restoration of the goods to Ixim or for their value, and for general relief.
The exhibit A, is a letter from Holtman to the appellant, dated New Orleans, 11th May, 1828, in which he slates, that he “ regretted infinitely1'1 his inability to remit the proceeds of Fougeres' consignment of cotton; but, to show now much he desired to secure the claim, he enclosed a receipted invoice or bill of sale of goods shipped, in the name of D. Smith, per steam boat Huntress, to Louisville, and consigned to J. G. Barclay & Co.; also, an order to them, for the delivery of the goods to Fougeres. After saying that he will remit the balance of Fougeres’ claim as soon as possible, the letter ■concludes thus: “being involved in a law suit, and fearing that an unjust attachment might be laid on goods ■shipped in my name, 1 have thought it expedient to ship them in the adopted name of D. ¡Smith.” From an en» dorsement of a man’s name, and the absence of a post mark, this letter was forwarded by private conveyance. The order on J. G. Barclay <fc Co. beárs date, New Orleans, 11th May, 1828, and requests them to deliver the goods to the appellant, and to settle with him for what may have been sold. The-invoice estimates the price of the goods at the aggregate of $1,978 97 cents, and receipts in full to Fougeres for that sum.. The endorsement on tic bill of lading requests J. G Barclay &. Co. to deliver the within mentioned merchandize to Fougeres. The invoice and endorsement are -both dated, New Orleans, 11th May, 1828; and the ■order on J. G. Barclay & Co., and the endorsement on the invoice, both stqle that the signature of Fougeres, the appellant, is signed at the foot, and so it seems to be; for, in the originals which have been brought up, there is the signature of “L. Fougeres,” evidently in a different handwriting.
■The complainant? answered the cross bill of the appellant, reiterating their charges of fraud and com- and denying that Fougeres ever held a note on Holtman, or made any shipment of cotton to him, and call on him for proof of the validity of his claim.
*507 Holtman filed a demurrer to the bill of tbe complainants, which being overruled, he abided by it.
The court dismissed the cross bill of Fougeres, subjected the property shipped to J. G. Barclay & Co. or its proceeds, to the payment of the complainants’ demand.
The only question of importance is, did: the transfer of the bill of lading and the receipied invoice, purporting to be a sale of the goods, invest the appellant with abunafide title on thelithMay, 182b? iftheydid, it- is manifest, that they were not subject to be attached on the 19th of that month, at the suit of the complainants, now appellees. The evidence against the validity of the appellants’ claim is not of a positive and direct character; and, unless it be condemned by a combination of circumstances sufficiently strong to taint it with fraud, it must prevail. For, it must be adm'tted, that the transfers to him -should be taken as fair, until the the contrary is made to appear by proof; for, as the appellants’ counsel correctly remarked, fraud is not to be imputed to any man, without evidence to base the imputation upon. The conduct of Holtman, as admitted on all sides, is that of a shameless swindler. • It is in proof, that he absconded from New Orleans on the day he made the shipment in a feigned name, lie was pursued to Mobile. The person there learnt, that he had escaped, or proceeded into the interior of Alabama. The witness speaks of being at Mobile, in pursuit, on the 3d of May.. It seems, from the place at which a letter written by Holtman in his assumed name of D. Smith to.T. G. Barclay & Co. is dated, that on the 10th of May he was in.Mobile; for on that day, and from that place, he addressed a letter to Barclay &. Co., enclosing am invoice of the goods consigned to them by the Huntress, and requesting them to make sales as soon as .practicable; He concludes this letter by saying, “I am on my way to the- north, and shall again Write you on my arrival, to inform you where to address your answer to.” This letter was mailed at Huntsville, on the 23d of May, and received by J. G. Barclay & Co., in due time thereafter at Louisville. It is admitted, that this letter was actually written in Mobile on the- 10th of May. The counsel for the appellants insists, that Holtman returned thence to New *508 Orleans, where, on the next day, the letter'to Fougereswas prepared, and, with its enclosures, transmitted to him at Tuscaloosa by private conveyance. It is contended, on- the contrary, that the passed from Mobile-up the -Bahama, by Tuscaloosa, to Huntsville, and there mailed his letter to Barclay- & Co., and that tire dating of hi > letter to Fougeres at New Orleans on the ITlh, is a mere device and afterthought to patch «p a claim in behalf of an-accomplice in his swindling. Wc lay no-stress upon the distance between Mobile and New Orleans. 5 ¡though more than one hundred miles apart, the speed wi.'h which travelling is done by means o> steam boais render’s it probable that a person might' pass from one of these cities to the other in twenty four hours, and prepare the-documents which-were sent toFougeres within lhat time. But when the distance is considered, it must be acknowledged, that Holtman was very fortunate after writing to Barclay -fe Co., at Mobile, on the 10th, to meet with a passage direct to New Orleans, that he should arrive in time the- next-day to prepare letters, and should there meet with a Rafe private conveyance to his correspondent irr Tuscaloosa.- 8udi a fortuitous concurrence oflucky events do not often attend persons engaged in playing Holt-man's game. We think every rational inference to be-drawn from the facts established, is opposed to-the idea that he did return to New Orleans, and was there on-the 11th. It is not probable that Boliman, after absconding, would return to the place where he had! made purchases, and shipped the goods in a fictitious name, in order to avoid his creditors. According to the appellants account, he had been doing business for some time in New Orleans. Other evidence conduces to the same conclusion; so-thathemust have been generally or at least extensively known there. It is not likely thathc would have risked his persona] safety among those whom he liad cheated, and from whom he lied. Again, in his letter written at Mobile-on the 10th,hesa-i-d'to Barf relay fr. Co., that he was on his ££way to the north.”- It is not likely that he would immediately turn his course,, and go back to the south-west. A gain, his letter of the 10th to Barclay & Co., is mailed at Huntsville; there is no endorsement (as is the case with the letter to Fougeres of the 11th,) from which it could be inferred, that he had'entrusted it to a private hand for convey *509 anee. To suppose that lie :sad sent ¡t by a prívate hand asía as ;íuu sville,in ord rto ave him-eifoi 'dsciv-esdeni ti cents postage, would bea- -íibui.ugto iro;. disposii .on too parsimonious, conside ing hi easjr conscience, and the 1 beraiity h.: displayed in paying the appellant with prope. ty obtained by defrauding Others. As the letter did get into the post ónice at Huntsville, we perceive no reasonable concluson, from ail the forego mg circumstances, but that it was put in fiero by Hoitman himself. This is consistent with the idea expressed by him that he was on his way to the north, and escapes the improbable sapposi.ion .hat ho would, in corresponding with his consignee relative to an impoitant shipment about which he desired haste, trust nis letter to ho partially conveyed' by the tardy movements of any private peraon but uimsclf. So far, t.ien, as it may be impor tant, we shall take it chat the letter to Foageres of the 11th, was not written at New Orleans, and that the transfers were not executed there on that date. The conclusion which weha\e arrived at, that the letter of the 10th was mailed by ijoiim m at Huntsville on the 23d, is a circumstance from which it muy be inferred, that the letter of the 1 ith, and the transfers of that date, were not written before the 2 Id; for the letter of the 10th would not then have been forwarded, if previous thereto, the goods had, in good faith, been transferred to the appellant, it may be, however, that Hoitman, on the 23d, had conceived a pian tu defraud the appellant, calculating on his delaj, and with that view his letter of the lOtii was transmitted, notwithstanding h.nexpressionsof infmitvregrct at his inability to pay Fougeres for his cotton.
Whether the appellant has presented himself in such an attitude as to merit the favor of the chancellor, will, therefore, be next inquired into. He is charged by the complainants with beuig in Moltm m’s company in Tabama,sincetheservice of,he restraining order. Ta this allegation,he makes no response. A must, therefore, bo taken lor confessed. Here, tnen, is a suitable opportunity for collusion, if the parties were so disposed. How ready Hoitman was for such a business, his previous conduct shows. But would he make propositions not warranted by morality or law? and if he did, wo -id the other accept them? In respec to Hoitman, it may ••■afely be aid, that no morality would restrain him. Wc cannoi *510 perceive any honorable motive which could have made' Fougeres the favorite creditor, so much so, that Holt-man would defraud- Zacharie, and others, to pay him. if there be arty thing, which entitles the appellant to such a preference, it has not been avowed; and, from the conduct of Holtman, we do not believe that he-would, be iuflue.nced by any honorable sentiment, if there existed ground for it. When an individual, by fraud, obtains property, and passes it to another, for the avowed purpose of paying a debt, the transfer should be keenly scrutinized; because that turpitude, which prompted him-- to acquire by fraud, equally prompts-him to hide and cover, by placing it out of reach in the hands of others. Is there nothing in the cause which shows that Fougeres is not a bona fide claimant? We think there is. He speaks of a note for loaned money, amounting to.between-1,500 and $1,600, and says he will file it, but he does not. He speaks ofcotton consigned, to the value of between $500 and $600, and. promises t-> file his account, but be does not. There is' a letter filed from Holtman to-,Fougeres, dated New Orleans, 1st April, 1828, relative to this cotton, in which. Holtman says the nett proceeds of sale amounted to ,$'750 40 cents, for which sum he encloses his note, and authorizes him to draw for the amount, payable 25th May, in which event, the note was to be returned. Here seems to be an inconsistency between the answer of the appellant, and his letter from, Holtman. His answer says nothing of a note or draft. His answer claims between $500 and $600 only for the cotton, and bis letter shows that his account for that had been merged in a note for $750 40 cents. So good a turn out would not be, we think, so lightly remembered. This letter is also without a post mark, nor does it appear how it was forwarded. By his answer, he proffers to exhibit the consideration upon which he-claimed the goods under the transfer of the Mth May. It had been charged against him, that the transfer was without any valid consideration. Having it completely in his power to exhibit his note and account, according to his own showing, and having offered to do so, his failure is a circumstance unfavorable to him. If, may be said, that if he and Holtman were colluding, the latter would, at any iime, put it in the power of the-former to exhibit a note or account according, to the, *511 -answer; and, therefore, no prejudicial inlerence should be drawn from the omisión. There was about a year between the filing of the answer and cross bill of Fougeres and its dismissal. During that time, he and Holt-man may not have seen each other, and consequently there would, in such event, have been no opportunity for arrangement, and getting a note to correspond with the answer. The movements of such a man as Holt-man, are generally uncertain and devious. There was ample time to have forwarded the exhibits, if they had been in his possession at home when the answer was -filed. The allegation, which was no; answered, from which it appears that Hollín m and Fou geres were together in '\labama, relates to a period subsequent to the 11th of May, and previous to the filing of the answer and cross bill, and hence there ¡¿nothing from which to infer that they met after that, before the trial. But the appellant says that he received the letter of the 11th ofMay, enclosing one to J. G. Barclay <& Co.,also, the bill of lading and the invoice. The letter of the 11th is written on a common sheet of letter paper; the letter or order, to Barclay & Co., on a half sheet of letter paper; the bill of lading is printed and written on a piece of paper not quite so large as a half sheet; the invoice has not been brought up by the subpoena duces tecum. Now, although these papers have been much used, still the impression made by tire original folding is visible, and by the aid of that, together with the direction superscribed, (after folding, no doubt.) and the assistance given by the wafering and break in the paper in opening, we have been enabled to put them up as originally folded, and we find, from so doing, that the letter of the 11th could not have contained the enclosures, which the answer says it did, and which the letter itself speaks of containing. The letter or order, to Barclay and Co., when folded, is as long and wide as the letter to Fougeres,and could not have been enclosed in the latter, unles» the envelope liad been larger than it evidently was originally. This shows, very satisfactorily, that these papers were never forwarded from New Orleans, as they purport on their face.
When a person obtains property by fraud and passes it to another for the avowed purpose of paying debts, the transfer should bo keenly scrutinized.
*511 Again, the order to Barclay & Co.,and the transfer on the bill of lading, both state that the signature of Fougeres was annexed, and so it seems to be. This is stated by Holtman, as though be had seen it done in his presence, and no doubt it was intended to produce the *512 impression with Barclay & Co., that there would be entire safety in delivering the goods to the appl;eant, whomighi be able, by writing, to identify the signature annexed is his own. It is entirely clear, that Holtman did know that the signature of Cougeres .vas not, to these papers, ;f lie'xecuted ¡bein in New Orleans. He does not inform Barclay ;l ¡, o. who ir, L. Pougeres is, or where c f eside-, and the i/hoie t. ansaction would lea. e ¡he -inp-essfon on the mind of Barclay Co. tha .; o- g- re> rigned in -, .ol.man s, alias Hmith’s, presence; tor he last i - t e i.me used in all the correspo:.deuce with ; arelay & Co. Unless (he signing by res m- k {¡lace in J iol man's pi esence, it could not operate as any check against .mpo.-ition; for, if the pape s, befo-. ,'hc, came io Ins hands, had. fallen into the po..ses;.k a of any one disposed to make an improper use o; them, such person would only have to personate lAegees to ammpbsh is. One of three deductions fiom all this is clear; that the papers were not prepared in New OdCans as they purport, or that Pougeres ■afterwards received them, being sent him from New Orleans, and annexed his name, being willing to carry on the imposition by producing tiie im-pression that it-was done at New Orleans in presence of Holtman, or that the papers were afterwards prepared and signed by both in Alabama in the presence of each other, and dated at New Orleans for a sinister purpose. The last we think the strongest.
Denny, for appellant; Crittenden and Duncan, foe appellees.
Again, the appellant was distinctly informed, by Holtman, that he e as trading upon the goods,shipped in a false name, .o avoid, as he says, an unjust attachment. No-v, if in any case a contract should be deemed valid, entered into with a man known at the time to be dealing and trading in a fabo name, where the rights of others are concerned, taking this fac.1 in connexion with all the other circumstances in this cáse, (and there are some entitled to weight which have notyetbeennamed,) we are of opinion, that (he transfers to the appellant were properly disregarded by the circuit court.
We do not perceive that there was any defect oí parties; all persons, claiming an interest in the goods, were before the court.
The decree is, therefore, affirmed, with costs.